OPINION OF THE COURT
Kaye, J.
A stipulation of settlement made by counsel in open court may bind his clients even where it exceeds his actual authority.
Plaintiffs, Carlton Hallock and Seeley Phillips, in 1968 purchased a 67.7-acre tract of land in Schoharie County, about two miles from the proposed site of a dam to be built by the Power Authority of the State of New York (PASNY). Plaintiffs intended to sell sand and gravel from their land to PASNY for use in construction of the dam, but the State, on behalf of PASNY, in 1969 appropriated the entire tract in fee. Plaintiffs filed a claim for damages in the Court of Claims and commenced a declaratory judgment action in Supreme Court against defendants, PASNY and the State, to challenge their legal right to take by eminent domain a full fee interest rather than simply an easement, contending that only a small portion of the sand and gravel on the land was actually required for the dam. In Hallock v State of New York (32 NY2d 599), we held that this issue could not be resolved as a matter of law on the record then before us and remitted the case for trial.
Trial was to begin on April 22, 1975, preceded by a pretrial conference that morning. Court rules required that attorneys attending pretrial conferences have authority to enter into binding settlements on behalf of their clients (22 NYCRR 861.17). Plaintiffs were represented by Anthony Quarter aro, who had served as their counsel throughout the five-year life of the litigation and had engaged in prior settlement discussions with defendants. Defendants had offered to settle by reconveying the land to plaintiffs and allowing them to keep the advance they had received, but plaintiffs advised Quartararo that they did not like that offer and wanted the matter to go before the Judge.
Hallock was ill on April 22 and did not attend the pretriial conference. Phillips, however, was present with his long-time *229 attorney, Henry Whitbeck, who had represented plaintiffs in their acquisition of the land. After discussion, counsel entered into a stipulation of settlement whereby Quartararo, for plaintiffs, agreed to accept reconveyance of the land and retention of the advance. The terms of the agreement were dictated into the record. The Trial Judge asked the attorneys for each side separately if they agreed to the settlement, and obtained their assents. He then observed that according to court rules the settlement “finalized the case,” and the ease was removed from the Trial Calendar. Throughout these proceedings, Phillips remained silent, as did Whitbeck; Hallock learned of the settlement later that day.
More than two months elapsed before plaintiffs voiced any objection. In mid-July 1975, Hallock expressed his dissatisfaction with the settlement, and plaintiffs thereafter moved to vacate the stipulation, relief which the trial court granted. The Appellate Division, however, ruled that a plenary action was required to set aside a stipulation of settlement (58 AD2d 67, app dsmd 43 NY2d 892),[1] and the present lawsuit followed. After trial, the court directed specific performance of the settlement stipulation, finding that Phillips was bound by the stipulation in view of his presence at the conference, and that Hallock was also bound because he had conferred authority upon Quartararo to negotiate and settle the case and had ratified the settlement. The court concluded that good cause for relief from the stipulation had not been shown.
A divided Appellate Division reversed, the three-justice majority concluding that Quartararo had no authority to settle the case on the terms embodied in the stipulation, rendering the settlement a nullity, and restored plaintiffs’ actions to their respective calendars.[2] The dissenting Justice found Phillips foreclosed from challenging the settlement because of his silence during the pretrial conference, and Hallock bound because he had clothed Quartararo with apparent, if not actual, authority to settle the case. We now reverse and reinstate the judgment of Supreme Court, Schoharie‘County, specifically enforcing the settlement agreement.
*230 Stipulations of settlement are favored by the courts and not lightly cast aside (see Matter of Galasso, 35 NY2d 319, 321). This is all the more so in the case of “open court” stipulations (Matter of Dolgin Eldert Corp., 31 NY2d 1,10) within CPLR 2104, where strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process. Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation (Matter of Frutiger, 29 NY2d 143, 149-150). Neither court below found fraud, collusion, mistake or accident; nor can we conclude as a° matter of law that such a showing was made. What plaintiffs must then demonstrate in order to sustain their position is that their agent, Quartararo, was without authority of any sort to enter into the settlement, and therefore no contract ever came into being.
From the nature of the attorney-client relationship itself, an attorney derives authority to manage the conduct of litigation on behalf of a client, including the authority to make certain procedural or tactical decisions (see Code of Professional Responsibility, EC 7-7; Gorham v Gale, 7 Cow 739, 744; Gaillard v Smart, 6 Cow 385, 388). But that authority is hardly unbounded. Equally rooted in the law is the principle that, without a grant of authority from the client, an attorney cannot compromise or settle a claim (see Kellogg v Gilbert, 10 Johns 220; Jackson v Bartlett, 8 Johns 361), and settlements negotiated by attorneys without authority from their clients have not been binding (see Countryman v Breen, 241 App Div 392, affd 268 NY 643; Spisto v Thompson, 39 AD2d 598; Leslie v Van Vranken, 24 AD2d 658; Mazzella v American Home Constr. Co., 12 AD2d 910).
Quartararo unquestionably had authority from plaintiffs to conduct settlement negotiations with defendants as he had done with plaintiffs’ knowledge and assent during the weeks prior' to April 22, 1975. At most, on April 22 he exceeded the authority plaintiffs urge had been limited shortly before by their injunction to negotiate a better deal. The question raised by this appeal, then, is whether it should be plaintiffs, or defendants, who bear the responsibility for Quarter arc’s conduct in accepting the settlement they claim had been rejected. We conclude that plaintiffs must bear that responsibility, and are relegated to relief against their former attorney for any damages which his conduct may have caused them (see Fox v Wiener *231 Laces, 105 Misc 2d 672, 676; Gaillard v Smart, 6 Cow 385, 388, supra; Jackson v Stewart, 6 Johns 34, 37).[3]
Phillips cannot be heard to challenge the settlement. He was in court during the entire pretrial conference. At no time during negotiation of the settlement or dictation of the agreement into the record — or indeed during the more than two months that followed — did Phillips voice an objection. Phillips acquiesced in, consented to, and is bound by the settlement (see Owens v Lombardi, 41 AD2d 438, 440-441 [Simons, J.], mot for lv to app den 33 NY2d 515).
Hallock also is bound by the settlement. Even if Quartararo lacked actual authority because, according to plaintiffs, Quartararo accepted the very settlement his clients had instructed him to reject, still Quartararo had apparent authority to bind Hallock.[4]
Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority. “Rather, the existence of ‘apparent authority’ depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal — not the agent.” (Ford v Unity Hosp., 32 NY2d 464, 473; see, also, Restatement, Agency 2d, § 27.) Moreover, a third party with whom the agent deals may rely on an appearance of authority only to the extent that such reliance is reasonable (see Wen Kroy Realty Co. v Public Nat. Bank & Trust Co., 260 NY 84, 92-93; Restatement, Agency 2d, § 8, Comment c; Conant, Objective Theory of Agency: Apparent Authority and the Estoppel of Apparent Ownership, 47 Neb L Rev 678, 681).
Here, as a matter of law, Hallock clothed Quartararo with apparent authority to enter into the settlement. Quartararo had represented plaintiffs through the litigation, engaged in prior settlement negotiations for them and, in furtherance of the authority which had been vested in him, appeared at'the final pretrial conference, his presence there constituting an implied *232 representation by Hallock to defendants that Quartararo had authority to bind him to the settlement (22 NYCRR 861.17; see, also, Di Russo v Grant, 28 AD2d 847; Continental Cas. Co. v Chrysler Constr. Co., 80 Misc 2d 552, 554). The attendance of the coplaintiff, Phillips, further enforced that appearance. In the circumstances, it necessarily fell to Phillips or Quartararo himself to reveal any restrictions on the attorney’s authority to settle, and absent such disclosure defendants’ reliance on the appearance of authority was entirely reasonable.
Plaintiffs insist that apparent authority is an equitable doctrine, having its origins in the principle of estoppel (see Rothschild v Title Guar. & Trust Co., 204 NY 458,461), and that defendants must establish detrimental reliance before the settlement stipulation can be enforced. The discontinuance of lengthy litigation on the day of trial, in reliance on the adversary’s settlement stipulation — even for defendants, who often may prefer that judgment be deferred — coupled with plaintiffs’ silence for more than two months thereafter, is itself a change of position, if such a showing is indeed even required before the doctrine of apparent authority may be invoked.[5] We need not inquire whether there was any actual loss of witnesses or evidence, for we recognize that, after five years, halting the machinery of litigation when a trial scheduled to begin that day is marked off the calendar constitutes detriment. Additionally, in the words of the dissenting Justice at the Appellate Division, to set aside this settlement stipulation “invites destruction of the process of open-court settlements, for every such settlement would be liable to subsequent rescission by the simple expedient of a litigant’s self-serving assertion, joined in by his attorney and previously uncommunicated to either the court or others involved in the settlement, that the litigant had limited bis attorney’s authority” (98 AD2d 856, 858-859).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court, Schoharie County, reinstated.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur.
Order reversed, etc.

. This ruling predated our decision in Teitelbaum Holdings v Gold (48 NY2d 51), in which we held that a plenary action is not always required to contest a stipulation of settlement.

. Justice Mahoney dissented in part, on the basis of evidentiary rulings which we do not reach, and would have remanded the matter to the Trial Judge with instructions to hold an evidentiary hearing testing counsel’s authorization to settle.

. Quartararo’s firm was originally joined as a defendant, but was dropped from the action on consent.

. Since we conclude that Quartararo had apparent authority to bind Hallock, we do not reach the alleged evidentiary error in excluding testimony bearing on the issue of Quartararo’s actual authority to bind Hallock, or the question whether the relationship between Hallock and Phillips was such that Phillips’ conduct would itself bind Hallock.

. See Greene v Hellman, 51 NY2d 197, 204; Restatement, Agency 2d, § 8, Comment d; Seavey, Rationale of Agency, 29 Yale U 859, 873-876; Conant, Objective Theory of Agency: Apparent Authority and the Estoppel of Apparent Ownership, 47 Neb L Rev 678, 683-684; Cook, “Agency by Estoppel”, 5 Col L Rev 36.